PALMER, Respondent, v. BRATAGER, Appellant.

(172 N. W. 507).

(File No. 4474.   Opinion filed May 13, 1919.)

1.   **Evidence—Exchange of Lands for Railroad Stock—Value of Stock, Receivership Proceedings, Sale Under, Evidence Of, Competency—Receiver's Sale, Presumption of Insolvency From, Whether Applicable.**

In a suit for damages based upon attempted rescission of a contract of exchange of lands for railroad stock; plaintiff claiming that, although defendant represented the stock to be worth 100 cents on the dollar, it was in fact worthless, the railroad having gone into hands of a receiver who sold the same under foreclosure of bonds, and because of an additional floating debt of the railroad company, held, that evidence of

facts relating to the receivership proceedings and sale there-under was revelant and competent, as against the objection that subsequent insolvency does not presumptively show insolvency at time plaintiff bought the stock; such rule of presumption not being applicable here.

2. **Evidence—Railroad Stock Issued for Services, Value Of—Approval of Value Re Services by Directors, Record of as Best Evidence.**

In a suit involving the value of railroad stock issued for services performed by the holder, held, that oral evidence is incompetent to prove the approval of the corporate directors of the value of the services in question as an equivalent for the stock; the corporate records being the best evidence.

3. **Contract—Exchange of Lands for Railroad Stock—Damages, Value of Impaired Stock—Directing Verdict**

Plaintiff, in a suit to recover damages for impaired value of railroad stock exchanged with him for land, claiming and testifying that deefndant represented the stock worth 100 cents on the dollar; fair deduction from defendant's testimony showing it was worth but about 50c on the dollar, held, trial court did not err in refusing to direct verdict for defendant-appellant.

4. **Contracts—Exchange of Land for Railroad Stock—Value of Stock, Representations of Holder Re, Whether Deceit—Reliance on Representations, Right To.**

The rule ordinarily adhered to in real estate transactions, that statements of value are mere matters of opinion and do not constitute actionable deceit, is not necessarily applicable to representations of value of corporate stock made by a corporate director and treasurer supposed to have inside information as to its value; and if the party exchanging land therefor relied on such representations, and had no reasonable opportunity to learn of their falsity, he could do so without being guilty of want of ordinary care or prudence.

5. **Appeals—Error—Corporate Unpaid Stock, Whether Assessible, Instruction Re—Exception That "Issue Not in Case," Futility.**

Where trial court's instruction that if corporate stock in question was not paid in full, stockholder would be liable to assessment for corporate debts, was excepted to because "that issue could not be in the case, as it does not appear but what the stock was paid for." Held, the exception was without merit.

6. **Corporations—Unpaid-for Stock, Whether Assessible to Pay Corporate Creditors—Instruction Re—Statute.**

If corporate stock, received by plaintiff in exchange for land, had not been fully paid for in money or services or both, it was assessible for purposes of paying corporate creditors; con-

struing Civ. Code, Sec. 441 (Rev. Code 1919, Sec. 8779); and an instruction accordingly was proper.

**7. Trial—Instruction Not Based on Evidence—Exception Wanting, Effect.**

Appellant's objection to an instruction on the ground that there was no evidence upon which to base it, is futile in absence of an exception to the instruction.

**8. Appeals—Error—Record, Failure of to Show Point Raised at Trial, Or Motion for New Trial, No Assignment of Errors, Effect.**

Where appellant seeks to raise a question which from the record does not appear to have been raised at trial, nor on motion for new trial, and the point is not made by an assignment of error, the question will not be reviewed.

Appeal from Circuit Court, Minnehaha County. Hon. Joseph W. Jones, Judge.

Action by A. W. Palmer, against against I. L. Bratager, to recover damages upon an attempted recission of contract of exchange of lands for railway stock. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Kirby, Kirby & Kirby,* for Appellants.
*W. F. Bruell,* for Respondent.

(1) To point one of the opinion, Appellant cited:
Lawson's Pres. Evid. 190, 581; Stark. Evid. (4th Ed.) 76, 161. Respondent cited:
Guy v. McIlree, 26 Pa. St., 92; Garrett v. Winberg, 37 S. E., 51.

GATES, J. Action for damages, based upon an attempted rescission of a contract of exchange of North Dakota lands for shares of stock of the South Dakota Central Railway Company. Verdict and judgment for plaintiff. From the judgment and order denying a new trial, defendant appeals.

The evidence on plaintiff's behalf tended to show that the parties met in April or May, 1914, and talked over the exchange of plaintiff's equity in 800 acres of North Dakota land for shares of stock in said railroad company owned by defendant; that defendant represented that he was the treasurer of the company, and had over $100,000 in the company; that the shares were worth 100 cents on the dollar; that the defendant would like to exchange some of it for land, but did not care to exchange much

of it; that defendant showed to plaintiff statements of the different railroads in the state from the report of the South Dakota Railroad Commissioners showing that said road was not indebted in proportion to the other roads and was earning money; that they were putting the earnings back into improvements; that the parties then separated, and plaintiff was to try to find out what he could about the railroad, about which he made some inquiries and could not find out anything, and defendant was to examine plaintiff's land; that on or about June 22, 1914, they entered into a written contract of exchange, wherein plaintiff's 800 acres of land were put in on the basis of $15 per acre; that the incumbrance on plaintiff's land was approximately $6,500, which left an approximate equity of $5,500, and that plaintiff received from defendant 55 shares of stock in the railway company, of the par value of $100 per share; that on March 31, 1915, the trustee of the bondholders of said railway company began foreclosure of the mortgage securing the bonds, and that on April 10, 1916, a decree of foreclosure was entered, and on June 12, 1916, the property of the railway company was sold for $952,000, a sum sufficient to pay the mortgage indebtedness and the indebtedness due creditors up to a certain amount, but that the stockholders received nothing; that thereupon the officers of the railroad company, pursuant to the decree, conveyed the railroad properties to the purchaser. The evidence further tended to show that shares aggregating $2,130,900 had been issued by the company, practically all at the inception of the company, and that bonds aggregating $850,000 had been issued, of which $30,000 had been paid at the time of the contract; that the floating debt of the company was then $65,580.75; that defendant had not paid more than $25 in money per share to the company, and that the rest of the consideration for his stock was rendered in services to the company. The plaintiff testified that he relied upon the representations of defendant as to the value of the stock and "that the first he learned to the contrary was in the early winter of 1915, when he saw in the paper that it had gone into the hands of a receiver"; that he next learned that the road had been sold, and that on February 9, 1917, he indorsed the certificates of stock to defendant and mailed them to him, with his notice of rescission, and demanded a reconveyance of the land.

[1] Appellant complains of the admission in evidence of the facts relative to the receivership proceedings and the sale of the road, claiming that evidence of the subsequent insolvency does not presumptively show insolvency at the time respondent bought the stock; in other words, that presumptions do not work backwards. We have no quarrel with that rule of law, but it has no application here. The controlling question in this case was the value of the shares of stock at the time of their acquisition by respondent. That evidence was relevant to that question. Klaveness v. Freese, 33 S. D. 263, 275, 145 N. W. 561, 566, and cases cited.

[2] Appellant next assigns error in the refusal of the court to allow him to give oral evidence as to the records of the corporation with reference to the approval by the board of directors and stockholders of the value of his services as an equivalent for the portion of the stock issued to him that was not paid for in money. Of course, the records of the company were the best evidence of that transaction, and the objection of respondent on that ground was properly sustained.

[3] Appellant further contends that the court erred in its refusal to direct a verdict for him on the ground of the insufficiency of the evidence to sustain a verdict. According to respondent's testimony, appellant represented to him that the stock was worth 100 cents on the dollar. Appellant's own evidence showed that it was worth not to exceed 54.17 cents on the dollar. Appellant testified that the road, 102 miles in length, was worth $20,000 per mile, an aggregate of $2,040,000. Deduct from this $820,000 bonded debt, plus $65,580 floating debt, leaves $1,154,420, which sum, divided by the amount of stock outstanding, $2,130,900, equals 54.17 per cent. At the valuation of $17,000 per mile, which was placed upon the railroad by the state, the value of the stock would not exceed 44.5 per cent. Surely the court did not err in refusing to direct a verdict for appellant.

[4] Under his assignment that the evidence was insufficient to sustain the verdict, and an assignment questioning the correctness of an instruction to the jury, appellant further contends that the representation, if made, that the stock was worth 100 cents on the dollar, did not constitute actionable deceit, but was mere "seller's talk." The rule ordinarily adhered to in real estate transactions, that statements of value are mere matters of opinion and do

not constitute actionable deceit, is not necessarily applicable to representations of value of corporate stock made by a director and treasurer of a corporation, who is supposed to have inside information as to the matters concerning which he makes representations. Rodee v. Seaman, 33 S. D. 184, 145 N. W. 441. If respondent did rely on such representations, and had no reasonable opportunity to learn of their falsity, he had the right to do so without being guilty of a want of ordinary care or prudence. Swoboda v. Rubin (Wis.) 170 N. W. 955.

[5] Appellant further complains of an instruction to which he excepted in the following manner:

"Defendant excepts, also, to that portion of the charge in which the court tells the jury that, if the stock was not paid in full, the stockholder would be liable for assessment for its debts, as that issue could not be in the case, as it does not appear but what the stock was paid for in full by money or labor."

[6] If the stock received by respondent had not been paid for in full, either in money or services, or both, then, of course, the stock would be assessable for the purpose of paying the claims of creditors. Section 441, C. C. (section 8779, Rev. Code 1919). In such case the stock might constitute a liability, instead of an asset. The instruction related to a matter that went to the vital issue of the value of the stock. There was no merit in appellant's exception.

[7] Appellant further says that the court erred in giving the italicized portion of the following instruction:

"If you find that the defendant did represent to the plaintiff that said stock was worth 100 cents on the dollar, and that he did represent that he was the owner of it, *and had paid fully the purchase price thereof,* and if you further find that such representations were relied upon by the plaintiff and were untrue, that the statements would constitute fraud."

He contends that there was no evidence that appellant represented to respondent that he had fully paid the purchase price of the stock. We agree with the appellant that we cannot find such evidence in the record, but neither are we able to find any exception to the instruction which raised that question.

[8] Lastly, appellant charges that respondent was guilty of laches in exercising his claimed right of rescission. This question does not appear from the record to have been raised at the trial, nor upon the motion for a new trial, nor can we find that it is raised in the assignment of errors. We are therefore not at liberty to express our views thereon.

The judgment and order appealed from are affirmed.